UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHAPEL RIDGE SECOND INVESTMENTS, LLC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NUMBER: 1:17 CV 207 ) |
| THE REGISTERED HOLDERS OF GREENWICH CAPITAL COMMERCIAL FUNDING CORP., COMMERCIAL MORTGAGE TRUST 2007-GG9, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-GG9; U.S. BANK NATIONAL ASSOCIATION, AS SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS HOLDERS OF GREENWICH CAPITAL COMMERCIAL FUNDING CORP., COMMERCIAL MORTGAGE TRUST 2007-GG9, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-GG9; AND LNR PARTNERS, LLC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## **OPINION AND ORDER**

Despite the complicated caption (which the Court will sift through shortly), this case is a relatively straightforward contract action between a mortgagor and a mortgagee. Presently before the Court is the Defendants' Partial Motion to Dismiss [DE 21] and the Defendants' request for oral argument on that motion [DE 41]. For the following reasons, the Partial Motion to Dismiss will be GRANTED. The request for oral argument will be DENIED.

# PARTIES AND CAUSES OF ACTION

Before turning to the substance of the Defendants' Partial Motion to Dismiss, it is helpful to clarify both the identity of the proper parties to this suit as well as the causes of action asserted by the plaintiff in this litigation.

The Plaintiff, Chapel Ridge Second Investments, LLC (hereinafter "Chapel Ridge" or "the Borrower") owns certain currently vacant commercial property commonly known as 10290, 10550 and 10560 Maysville Road, Fort Wayne, Indiana 46835 ("the Property"). Complaint, ¶9. In December, 2006, Chapel Ridge executed a promissory note in the amount of six million four hundred thousand dollars ($6,400,000) ("the Note") secured by a corresponding mortgage ("the Mortgage") on the aforementioned properties to Greenwich Capital Financial Products, Inc. ("Greenwich"). The Mortgage granted Greenwich a security interest in the Property, its leases, rents and proceeds, and certain other property as described in the Mortgage.[1]

By way of certain assignments, both parties acknowledge that Defendant U.S. Bank National Association ("U.S. Bank") is the current holder of the Loan Documents. Both parties further acknowledge that "The Registered Holders of Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2007-GG9, Commercial Mortgage Pass-Through Certificates, Series 2007-GG9" ("the Registered Holders") is not a legal entity that is capable of being sued and that the proper identity of the Lender is U.S. Bank. Accordingly, the Registered Holders are DISMISSED from this lawsuit.

In addition, Plaintiff has named LNR Partners, LLC, ("LNR") as a defendant who is the loan servicer for the above-referenced loan. LNR is authorized by U.S. Bank to act on its behalf

---

[1] For ease of reference, the Note and the Mortgage will be collectively identified throughout as the "Loan Documents."

with respect to enforcement of the Loan Documents. Accordingly, despite the lengthy caption, the Plaintiff has, in essence sued U.S Bank and LNR (hereinafter, collectively "the Defendants").

Turning now to the causes of action asserted in this suit, in their Motion the Defendants express confusion over the precise nature of the Complaint against them. On their reading of the Complaint, Plaintiff has asserted causes of action for breach of contract, negligence, and tortious interference against them. However, in its response, Chapel Ridge indicates that it has asserted only the following claims: breach of contract and tortious interference with contract against U.S. Bank and claims of negligence and tortious interference with contract against LNR. It asserts no negligence claims against U.S. Bank and no contract claims against LNR. With that clarification, the Defendants' Partial Motion to Dismiss addresses only the claims against LNR and the tortious interference claim against U.S. Bank.

## FACTUAL BACKGROUND

As noted above, Chapel Ridge entered into a commercial loan agreement for the Property, which operates as a shopping center. At the time it entered into the loan agreement, the shopping center had various tenants, including Marshalls and Office Depot. Through a series of assignments, U.S. Bank is the current holder of the Loan Documents and, as such, is the Lender who is subject to all the terms and conditions of the Loan Document as negotiated by its predecessors.

Under the terms of the Mortgage, the parties made certain covenants including covenants regarding Chapel Ridge's obligations for leasing the real estate. Under Section 14 of the Mortgage, Chapel Ridge had the right to enter into or modify without the Lender's prior written consent, "any lease of space at the Property now existing or hereafter made which affects less than 5,000 square feet and provided the term of such lease is less than five (5) years (an 'Exempt Lease')…"

(Complaint, ¶11).  Also, under Section 14 of the Mortgage, for leases other than Exempt Leases, the Mortgage required Chapel Ridge to obtain Lender's consent before entering into such leases. The Mortgage further contains a clause which specifically provides a covenant that the Lender's consent "shall not be unreasonably withheld."  (Complaint, ¶12).

According to the Complaint, on or about March 29, 2016, Chapel Ridge, through its leasing agent Zacher Company ("Zacher"), sent to the predecessor Lender's servicer, Wells Fargo Bank, N.A., ("WFB") a proposed lease regarding the existing tenant, Office Depot wherein it requested consent to the proposed lease.  (*Id.* at ¶'s13-14).  Office Depot's lease was set to expire on November 30, 2016 and Office Depot exercised its first renewal option for an additional five years with some adjustments in the lease terms which required the consent of the lender.  The proposed Office Depot lease was in excess of 5,000 square feet and the term of the lease was for 5 years including additional optional terms. (*Id.* at ¶13).

After receiving no response from WFB, on April 13, 2016 Zacher re-sent the request to WFB and inquired if WFB had looked at the request.  WFB responded by indicating that it was sending the proposal to its Leasing Team for lender approval.  Two days later, WFB requested additional information from Zacher and indicated that the approval request would be forwarded to LNR as a "special servicer" given the size of the tenant's premises.  (Complaint, ¶17).  Zacher, in turn, provided all the additional information requested.

On April 20, 2016, LNR contacted Zacher requesting an additional copy of the proposed lease documents along with some additional information, which Zacher supplied on the same day. Additionally, LNR requested a payment of $2,000.00 from Chapel Ridge as payment to review the proposed lease documents.  Chapel Ridge paid the $2,000.00 requested despite having no contractual obligation to do so under the Loan Documents.  (Complaint, ¶s 18-19).

4

On June 17 and again on June 27, 2016, Zacher contacted LNR requesting updates on the status of the Lender's approval of the Office Depot lease renewal. LNR responded on June 27, 2016 indicating that the request had been forwarded to senior management for review. (Complaint, ¶21).

By July, 2016, Office Depot began growing impatient with the approval process. In July, 2016, Zacher again requested an update on the lease approval and forwarded to LNR the requests it was receiving from Office Depot regarding the lease approval. On September 1, 2016, Zacher, at the behest of Chapel Ridge, again requested approval of the proposed lease with Office Depot and forwarded a request from Office Depot to discuss the matter with LNR directly. (Complaint, ¶23). This request was declined by LNR and LNR failed to respond to Zacher or Chapel Ridge as to the status of the lease approval. (*Id.*).

On September 14, 2016, Office Depot officially terminated lease negotiations with Chapel Ridge because "the lender's consent has not been received." Thereafter, Office Depot vacated the premises prior to the expiration of its lease. (Complaint, ¶24).

On March 31, 2017, Chapel Ridge filed the instant action in state court alleging that U.S. Bank breached the terms in the Loan Documents by unreasonably withholding consent for the lease with Office Depot; that LNR owed a duty to Chapel Ridge to properly review and promptly respond to the proposed lease agreement between Chapel Ridge and Office Depot; and that both U.S Bank and LNR tortiously interfered with an advantageous business relationship. Defendants, by invoking diversity jurisdiction, then removed the action to this Court on May 8, 2017 [DE 1] In their current motion for partial dismissal, the Defendants seek dismissal of Chapel Ridge's negligence claim against LNR and the tortious interference claims against both Defendants.

## APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations other than fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" that the pleader is entitled to relief. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts must be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). However, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

(a) <u>Intentional Interference with a Business Relationship</u>

The Complaint alleges that Chapel Ridge's lease with Office Depot was not renewed because U.S. Bank and LNR interfered with Chapel Ridge's business relationship with Office Depot. Defendants argue that this claim must fail because there was no business relationship to interfere with and, even if there were, the complaint does not allege the type of intentional or illegal conduct required for the claim to succeed.

To establish a claim for tortious interference with a business relationship under Indiana law, one must demonstrate: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional inference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *Pierce v. Zoetis, Inc.,* 818 F.3d 274, 278 (7th Cir. 2016) (internal quotations omitted). A party bringing such a claim must also "prove that the defendant committed an illegal act to achieve [its] end." *Id.*

Plaintiff asserts that U.S. Bank and LNR interfered in the lease negotiation between it and Office Depot. Throughout the Complaint, Plaintiff refers to the "proposed" lease and the "lease negotiations" which raises an initial question as to whether there, in fact, existed a valid business relationship with respect to the lease negotiations. Clearly, the existing lease was a valid contractual arrangement between Office Depot and the Plaintiff through its lease end. However, Plaintiff has plead only that the parties were in negotiations for lease renewal and that the Defendants interfered in that process. There is no allegation that the Defendants interfered with the existing contractual relationship between Office Depot and the Plaintiff.

However, for the sake of argument, assuming the lease negotiations qualify as a "business relationship," Plaintiff has plead no facts establishing that either of the Defendants' actions were "intentional" *See Pierce*, 818 F.3d at 278 (noting a plaintiff must prove "defendant's intentional interference with" a business relationship), or illegal. *See id.* (under Indiana law, a "plaintiff must prove that the defendant committed an illegal act" in order to prove tortious interference with a business relationship). At most, Plaintiff has alleged non-action and delay on the part of the Defendants. While this is relevant to their underlying contract claim with U.S. Bank and the

assertion that U.S. Bank unreasonably withheld consent to the proposed lease arrangement, it is not sufficient to state a claim in tort for interference with a business relationship.

This said, Plaintiff asserts that conduct by LNR can be imputed to U.S. Bank under a theory of respondeat superior because LNR was an agent of U.S. Bank. To establish an agency relationship under Indiana law, Plaintiff must allege (1) a manifestation of consent by the principal to the agent; (2) an acceptance of the authority by the agent; and (3) control exerted by the principal over the agent. *Douglas v. Monroe,* 743 N.E.2d 1181, 1186 (Ind.Ct.App. 2001). Plaintiff does make a general assertion of agency between LNR and U.S. Bank in the Complaint. However, assuming these facts satisfy the pleading requirements for a valid agency relationship between LNR and U.S. Bank, the Complaint still remains void of any allegations that LNR acted intentionally or illegally to thwart the proposed business relationship between Office Depot and the Plaintiff. Without any assertion of intentional or illegal activity, Plaintiff cannot impute the inaction of LNR to U.S. Bank to hold U.S. Bank vicariously liable in tort for the actions of LNR.

Accordingly, the Motion to Dismiss the intentional interference with business relationship claim fails as a matter of law and the Court **GRANTS** the Defendants' Partial Motion to dismiss the claims for tortious interference with business relationships against both LNR and U.S. Bank.

**(b) Negligence**

Next, Plaintiff asserts a negligence claim against LNR. "The elements of a negligence claim under Indiana law are: '(1) a duty owed to plaintiff by defendant, (2) breach of duty by allowing conduct to fall below the applicable standard of care, and (3) a compensable injury proximately caused by defendant's breach of duty.' " *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 635 (7th Cir.2007) (quoting *Bader v. Johnson,* 732 N.E.2d 1212, 1216–17 (Ind.2000)).

Defendants assert that Plaintiff's negligence allegations against LNR must also be dismissed because LNR did not owe a duty to the Plaintiff.  In response, Plaintiff contends that a legal duty between LNR and Plaintiff arose by the payment of $2,000 from Plaintiff to LNR for its review of the proposed Lease Agreement.  According to Plaintiff, the payment from it to LNR created an agency relationship whereby "LNR Partners, now, as a dual agent, agreed to review the Office Depot lease, on the part of both Lender and Plaintiff."  As a result of this agency, Plaintiff argues that LNR owed it a duty to act in good faith and with due care.

Unfortunately, while Plaintiff makes this argument in the briefing there are no facts from which it can be plausibly inferred that LNR was acting as Plaintiff's agent in the Complaint. Plaintiff alleges that LNR requested a payment of $2,000.00 to review the lease agreement and that Plaintiff paid the $2,000.  While this payment arguably gives rise to a business relationship, under Indiana law, a business relationship does not give rise to a fiduciary duty. Rather, there must be a "special circumstances" which creates a "relationship of trust and confidence." *Wilson v. Lincoln Fed'l Savings Bank,* 790 N.E.2d 1042, 1046–47 (Ind.Ct.App.2003).  Moreover, to satisfy the control element of an agency relationship, "[i]t is necessary that the agent be subject to the control of the principal with respect to the details of the work." *Turner v. Bd. of Aviation Comm'rs*, 743 N.E.2d 1153, 1163 (Ind. Ct. App. 2001).  Here, there are no facts pled from which it can be inferred that Plaintiff had any control over the review process for the lease.  Given the facts pled in the Complaint, there is simply no basis to conclude that LNR and Plaintiff had an agency relationship whereby LNR owed a duty to the Plaintiff with respect to its review of the proposed

lease agreement.[2]  Accordingly, the Plaintiff's claim against LNR under a theory of negligence is DISMISSED.

## CONCLUSION

Based on the foregoing, the Defendants' Partial Motion to Dismiss [DE 21] is GRANTED. The Motion for Oral Argument [DE 41] is DENIED.  The Registered Holders and LNR are DISMISSED from this suit as to all claims against them.  The sole remaining Defendant is U.S. Bank.

SO ORDERED.  This 10th day of January, 2018.

s/ William C. Lee<br>
United States District Court

---

[2] Plaintiff has specifically disavowed the notion that it is asserting any claim in contract by virtue of its payment of the $2,000 to LNR to review the proposed lease.  *See* DE 32, Plaintiff's Response, p. 2 ("With reference to Defendants' request to dismiss any breach of contract claim against LNR Partners … and any negligence claim against Lender … no such claims exist.  Breach of contract is identified in paragraph 25 of Plaintiff's complaint and is alleged against the Lender, not LNR Partners.").